JUSTICE RICE
dissenting.
¶32 I admire the simplicity of the Court’s conclusion in ¶ 17 that it would be “inequitable” to assess a taxpayer with interest for a period of time in which the taxpayer had actually overpaid its taxes. However, as the Court necessarily acknowledges, in ¶ 19, the plain meaning of the statute does not support this conclusion, and I cannot decline to enforce the statute on “equity” grounds. Further, at the end of the analysis, I do not believe the interest assessment here is inequitable.
¶33 Neither can it be said that the plain meaning of the statute leads to an absurd result, when the whole tax collection picture is reviewed. Although the Court also adopts an “absurdity” analysis, it should be noted that U.S. West does not argue that the statute is absurd. Importantly, U.S. West presents a very narrow legal question for our consideration. It explains that “[t]his appeal is entirely a question of statutory construction” and offers that “the legal issue is the application of that statute to a specific set of facts.” We should answer the question presented and, after “applying the statutes to a specific *9 set of facts,” should properly end our work. Instead, the Court conjures up new factual scenarios in order to chase perceived absurdities.
¶34 While it may be natural to view a taxpayer’s liability as a singular issue or amount, underpayments and overpayments are actually treated separately under the 1997 statutes. Underpayments, including the assessment of interest thereon, are governed by § 15-31-510, MCA (1997), and overpayments, including interest to be paid on tardily processed refunds, are governed by § 15-31-531, MCA (1997). The processes and schedules for the treatment of these are completely different, and the statutes make no effort to coordinate with each other. And for good reason, as this case shows.
¶35 Had U.S. West promptly filed its original return in May 2000, it would have been entitled, pursuant to that return and DOR’s review, to a refund within six months without interest, or with interest thereafter. However, it did not file its original return until October 2000, and after further delays by U.S. West in responding to DOR requests, the refund was ultimately paid by DOR in June 2001. Then, U.S. West filed an amended return in December 2002, reflecting additional 1999 income and additional tax liability. The Court, combining these events together, concludes that “[a]t no point between May 15, 2000, and June 7, 2001, did U.S. West ‘owe’ any taxes ....”
¶36 Turns out it actually did. By later amended return, the company declared additional 1999 income it had originally failed to declare and for which it owed additional taxes during this period. The Court excuses the payment of interest on this amount between May 15,2000, and June 7, 2001, but fails to consider that this time period was manufactured, in large part, by U.S. West’s late filing and its failure to respond promptly to DOR’s inquiries. Considering the separate issues separately — overpayment and underpayment-U. S. West is entitled to interest on its overpayment in accordance with the schedule set forth in § 15-31-531, MCA (1997). It gets no more. Then, considering the underpayment caused by the failure to declare all of its income, it must pay interest thereon in accordance with § 15-31-510, MCA (1997). This Cotut should not don teller visors and attempt an “equitable” offset of these separate obligations.
¶37 The Court does not explain what is “absurd” about the operation of these statutes. There should be nothing inherently absurd about the Legislature’s use of two separate statutes to make two different calculations and not require an offset against the other. If this accounting scheme has led to an “absurd result,” then we should fear for the validity of much of the tax code. I would affirm the District *10 Court.
¶38 The Court continues its journey outside of the codebook under Issue 2. Envisioning even more inequity which could result in the case of a “hypothetical taxpayer” who delays responding to the DOR for five months and three weeks, the Court decides to legislate its own solution to this “dreadful” potential.[1] However, the plain language of the statute clearly provides that the six-month “safe harbor” is calculated “from the date the return is due or from the date the return is filed, whichever is later[.]” Section 15-31-531(2)(a), MCA (1997). Nothing in the statute permits this six-month period to be extended by reason of a taxpayer’s delay in responding to an information request from DOR-indeed, this is the incentive built into the statute in favor of taxpayers to receive a timely refund, which the Court ignores entirely. If one wants to employ hypotheticals, consider that the Court has now eliminated the payment of interest for the taxpayer who submits his return timely, then waits five months and three weeks for his refund, only to receive a last minute request from DOR for “additional information” before the safe harbor expires. Having gained the extension of the safe harbor which the Court legislates today, DOR can issue the refund to the taxpayer within the additional time and pay no interest. The Court thus changes the statute from one which provides an incentive in favor of the taxpayer to one which provides an incentive in favor of the government. Reversal is appropriate.
¶39 I would apply all of the statutes as written.
CHIEF JUSTICE GRAY joins the dissent of JUSTICE RICE.

 This “hypothetical taxpayer” has nothing to do with the facts of the taxpayer in this case. Further, I question the validity of the premise that taxpayers would delay the processing of their refunds for five months in the hope that some interest might be added to the refund they have delayed obtaining.